Good morning, and may it please the Court. I'm Josh Cohen, Assistant Federal Public Defender, on behalf of Appellant Michael Garner. Michael Garner was frisked after he was stopped for a traffic infraction on a motorcycle late at night in San Francisco's Bayview neighborhood because the police that affected the stop discovered, as a result of a computer search, that Mr. Garner had prior police contacts, including a prior contact for carrying a concealed weapon. This Court has not spoken clearly on the issue of what role prior criminal history can play in a reasonable suspicion determination. Other courts have spoken on it, in particular the Seventh and the Tenth Circuits, and what they have said very clearly is that a prior criminal history standing alone is not sufficient to establish reasonable suspicion, but that a prior criminal history in combination with other circumstances may, in some cases, give rise to reasonable suspicion. Well, this is a Terry stop. You don't suggest that they didn't have a right to stop him? No, Your Honor. I do not insist that. Okay. I think that the question, if the Court were to follow a similar mode of analysis as the Seventh and Tenth Circuits, is whether the circumstances that were existing in this case and what happened after the stop was sufficient in combination with the fact of the criminal history to give rise to reasonable suspicion. Is there a slight difference here between a reasonable suspicion of a commission of an independent crime or a reasonable suspicion that he's dangerous and armed with regard to protecting the police? I mean, Terry kind of has two strains, and some – Terry itself was really about the latter, but it's usually used in the former. And this is really the latter, as I understand it. I mean, what the police had a reasonable suspicion of is that he may have been carrying a gun, and it turned out they were right. And so they weren't trying to, as I understand it, to frisk him in order to arrest him for carrying the gun. They were trying to frisk him to get the – to protect themselves. And that's exactly the question. Was there a sufficient basis to believe – If I'm asking you whether the Seventh and Tenth Circuits cases were that, my impression is that they were not, although I could be wrong. I thought that there were instances in which you were trying to use the fact that he had had a drug conviction before as a basis for doing a Terry search for drugs or a Terry frisk for drugs. No, Your Honor. I think that the cases that are cited in – from both the Seventh and the Tenth Circuits are directly apposite here. In particular, I would call the Court's attention to the Walden case, which is cited by the government in the Seventh Circuit. The issue there was whether there was a sufficient reason to conduct a frisk, a protective frisk following a stop, which was in fact supported by reasonable suspicion. Of the safety alert case, right.  And also, I would point to Sandoval, which is the Tenth Circuit decision. There, the issue was a straightforward traffic stop for a speeding violation. The officer went back to the squad car, he ran a computer check, found some information which gave him pause, and then had a further conversation with the defendant about whether he – There, the pause was with regard to a narcotics violation. So that's really in the second category that I was talking about. I'm sorry. It was really with respect to – A narcotics violation. The original stop in Sandoval, I believe, was a – was a speeding violation. I understand that, but it wasn't a safety issue. Oh, that's correct. But the issue was – The one case that's really pertinent here is Walden directly. Okay. The circumstances that existed in this particular case that the government contends were sufficient to create a reasonable suspicion on the part of the officers that their safety was in danger at this particular point in time, all related to the circumstances that existed that evening. It was late at night. It was a high-crime neighborhood. We don't dispute that. There was a motorcycle, not a car. The defendant was wearing a jacket, which would have been able to conceal, as most jackets can, a weapon. There was nothing in this case – And they thought he – they had reason to think he stole the motorcycle. Well, Your Honor, the – I would – That seems critical to me. I don't believe that that was actually part of the basis that was before the district court. I don't think that the record at this point supports the view that the district court believed that these officers were under the impression that he was stolen. Well, it doesn't matter what the district court believed. I mean, objectively speaking, at this point, they claimed that one of the reasons they stopped him was they thought he – or they certainly had suspicion that he had stolen the motorcycle because it – and they had more of a suspicion after they did some investigation because it wasn't a registered motorcycle and he didn't have a license to drive a motorcycle and he didn't seem to know how to drive a motorcycle. And what I'm suggesting to the Court is that was disputed below. In the district court, we did not concede that they had any particular basis for believing that he had, in fact – You don't have to concede it. The fact is those three facts were established. Is that right? That he – the facts were established that that motorcycle was not registered to him, yes. It was also very clear that – It wasn't registered at all. It was registered, Your Honor. It did not have a current registration. It had a – it had a lapse registration. That's correct. It had a lapse registration. It was also very clear, I think, to the district court that he was not charged or cited for being in possession of a stolen vehicle. But in terms of what the police had a reasonable suspicion of at the time they decided to frisk him after finding out that he had a prior conviction for concealing a weapon and could have been concealing the weapon the way he was dressed, not that that led to a suspicion, but he could have been, was certainly something to take into account that this wasn't really just – that they had risked to suspect something other than just a traffic violation. If that's the case, Your Honor, I would submit that what one would have expected the officers to do would have been to conduct that frisk at the time that they initially stopped the defendant. Instead, they did not do that. They took his license from him. They took it to the squad car. They did a computer review, and it was only when that review revealed the fact of a prior conviction that the officer then came back to Mr. Gardner. Kagan. You agree that – I mean, you agree that the standard is whether – that they could take the prior into account given all the circumstances. And to me, the key circumstance here perhaps is that they had reason to believe he stole the motorcycle. What I would submit is absent from this case is a number of sorts of particularized facts that this Court has relied upon in the past to establish that someone is potentially armed and dangerous. There was no nervous behavior on the part of Mr. Gardner. There were not evasive answers to the questions that were put to him by the officers. There were no furtive movements. There was no efforts to avoid apprehension. His hands were not concealed. There was no bulge in the jacket. And I guess what your Honor is getting to is, was the offense itself, the offense of which he was suspected, the kind that would tend to indicate that he might be in possession of a weapon. I would submit that this is not that kind of case, even if the Court takes the position that they had a basis for believing that he had stolen the motorcycle. The types of cases in which this Court has said, well, we can infer from the nature of the charge, the offense that we think he committed, that he may be in possession of a firearm, are cases like burglary, like bank robbery, like the possession of narcotics for sale. And as I listen to you, I hear Judge Breyer say you can't, you have to look at the whole totality of the circumstances, because you keep chopping the pieces off, as was happening at the district court as well. And I actually, Your Honor, I respectfully submit that we were not – I was never seeking to divide and conquer in the sense that our visas suggest that the Court is not permitted to do. Instead, it was an effort to encourage the Court to consider the totality of the circumstances, and in particular, to consider whether the addition of the fact of prior criminal history was sufficient to turn a stop that otherwise would not have been a sufficient basis for a search into one that was. Well, Counsel, I think that perhaps getting the word that he had a prior weapons conviction was kind of the frosting on the cake. They had a justified stop. They suspected that he'd stolen the motorcycle, but they don't decide to frisk him until they get the report that, in fact, he had a prior weapons conviction. And it seems to me that any reasonable officer in that situation at that time of night would have done a frisk and had a right to do a frisk. And I understand that position, Your Honor. What the test is – That's what the judge essentially held. That is essentially what he held, yes. And what we were protesting in the district court and what we protest now is that the test is whether there was a reasonable suspicion to believe that he was currently dangerous to the officers at that point in time. And if he was not dangerous at the point where they initially stopped him, if their suspicions about potential vehicle theft or motorcycle theft were not sufficient, the addition of this extra fact, whether it's considered frosting or a new fact, didn't suddenly turn someone into a dangerous person when he wasn't before that. I will reserve my time for that. Thank you very much. We'll give you a minute in rebuttal. Thanks very much. May it please the Court, my name is Stacey Geis. I'm an Assistant United States Attorney here in the Northern District and I represent the United States. I'd like to raise three points with the Court here today, and some of those have been addressed. They basically are that the case here is, as the Court has pointed out, about a minimally intrusive search, a pat-down, that was conducted to ensure officer safety after a justifiable stop was made. And that what the officers learned, first what Officer Ellis learned was that this person, after running the computer search, was a danger potential, had at least five prior contacts with officers where weapons were involved, and what Officer Kirchner learned through the earpiece was that, which was immediately conveyed, was that this person that he was talking to late at night in a high-crime area at a minimum had a prior police contact for carrying a concealed weapon. And when combined with the other factors, gave him the reasonable basis to believe that his or his partner's safety was at risk. And the third point was that the District Court did properly reject the divide-and-conquer approach that was articulated by the appellant, both at the District Court and here in the briefs in front of this Court. As to the first point, here we are talking about a very limited search. It's a pat-down search. It's a pat-down. It's an over-the-clothes search for officer safety. It's not a going-into-the-pant-pockets, like we saw in the Cibron case, where what they're really looking for is drugs. It is a limited search, which requires a limited showing. And this Court, in prior cases, has justified or upheld a frisk with arguably much less facts. And I turn to the Garcia case, the Matarola case, and the $109,179 case. And, indeed, when this Court was confronted with a case where the officer learned of a prior, and in that case it was an armed robbery, and it's the Garcia-Rivera case, the Court did uphold the frisk. And I would argue that this case is very similar to the Garcia-Rivera case. The second point that is important to stress is that this, the officer here didn't just learn that this person had a prior contact. It wasn't a prior hit-and-run, or a prior for suspended license, or even possession for sale of drugs, which maybe would lead one to believe that there could be a weapon involved. Here, it was possibly the most relevant charge that an officer could be confronted with, carrying a concealed weapon, the very thing that a reasonable person in his shoes would be concerned about at that time. This case is not like Sandoval, which the appellant heavily relies on. There, it was 8 in the morning, daylight, in a major highway, not a high-crime area. And there, all the cop, the officer learned after the valid stock was that this person that he was talking to had a prior for hit-and-run and drugs. Nothing that would lead one to believe this person could be violent, or armed, or dangerous. Whereas here, as the court notes, this was a high-crime area, late at night, he's wearing a jacket capable of concealing a weapon. He's standing next to the officer, as opposed to being in a car, which does make the officer feel more vulnerable. He's just been stopped for traffic violations that lead the officers to believe, and this was noted at the lower court at ER 61, that he stopped for traffic violations that could indicate the bike was stolen. And how that may have been stolen, we don't know, if it was, and if whether or not there could have been something that was involving a weapon to accomplish that. So they're very ---- One of the factors the district judge mentioned was the large jacket, as I recall. Pardon? I say one of the factors the district judge mentioned was that the man was wearing a large jacket. And I'm wondering just how significant that is. I mean, don't all motorcycle riders almost wear large leather jackets? I mean, isn't that the uniform? It is, Your Honor. And I think if that was the only factor you're presented with, that the person on a motorcycle was wearing a jacket, that would be a much different case. But here, he was wearing a jacket that could conceal a weapon, and that was undisputed. It's not really a basis for suspicion. It's rather a basis for not alleviating suspicion. Pardon? It's really not a basis for suspicion. It's simply a basis for not alleviating suspicion. In other words, if he weren't wearing the jacket, then presumably they probably couldn't have frisked him, because where would he have had the concealed weapon, or at least arguably so. But with the jacket, that doesn't give him a reason to think he is doing it. It just doesn't give him a reason to believe he is doing it. That's correct, Your Honor. It doesn't dispel his concerns. It's kind of neutral, zero or something. And that is something courts have looked to, is whether or not at some point could these concerns be dispelled. And the fact that he was wearing a jacket only added to the concern that he was now, again, he's making his decisions in a very quick amount of time, and that factor did combine with the other factors, which is, of course, included with one of the more significant factors, is that this person in the past had been in contact with police and was carrying a concealed weapon at the time. In these cases, I think it's, as the Terry Court stated, these officers are making quick decisions, and they must make quick decisions in these situations to ensure their safety, and that the inferences they make as trained officers are also a factor that should be considered in the analysis. And we need to trust their instincts, I think, at these critical points when they are making decisions that basically could affect their life. The third and last point is just that the district court did properly apply the appropriate standard, which was totality of the circumstances, and that the court properly rejected the divide-and-conquer approach of trying to look at each factor independently and either see if that alone is enough to provide sufficient basis, or according to such an insignificant amount of weight that what you're really doing is what happened in the Arvizu case, where they're just looking at a couple of the factors as opposed to all of the factors. Here, the officer was taking into account all of these factors and rendering a decision that, indeed, this person could be armed and dangerous. And I would say, again, it's the officer doesn't have to have any reasonable certainty, as was outlined in the Cortez case, it's just a probability that this person he's now talking to late at night in a high-crime area standing right next to him, and he was just learned as a prior for carrying a concealed weapon, and the most relevant charge, probably, is possibly or could be armed and dangerous, whichever he was. But just the fact that there seemed to be some indication that they suspected him of stealing a motorcycle matter? Pardon? Just the fact that they had they seemed to believe that he stole the motorcycle or had some reason, some reasonable suspicion that he stole the motorcycle. Okay. That is a factor they can consider, and, indeed, courts have considered, this Court in the Garcia case considered that as well. What was the reason for the stop in the first place? And what inferences can one make from that stop? It wasn't a reason they relied on, ultimately, right? They relied on a traffic stop, but they articulate a belief that he may have stolen the motorcycle. In this case? Yes. It was, again, I think it's one of the factors that the officers considered and that the court considered, the district court did, and, again, that's at ER 61, considered that as one of the factors in making this decision, and it's in the record. Now, if that fact had not been a part of the case, and they'd stopped him, and he had his own license, and he had the registration for the motorcycle, could they have frisked him? If the stop had just, say, been for a cracked tail light? He obviously had a moving violation, so they could stop him. But they ask him, which is routine, they ask you for your driver's license, and then they asked him for the registration of the motor vehicle. What if both of those had been okay? He had his license, and he had the registration for the motorcycle. Could they then have frisked him? I think in those circumstances, when you combine the other factors, the late at night, high crime area, and the jacket, capable of concealing a weapon, and then learning this important fact that he was carrying a concealed weapon, I would argue that there would still be enough. Again, it's a very, because it's such a limited search that is being done, just a pat down, nothing more invasive, like an arrest or, you know, a more invasive search. That basically means that anybody who's driving around, whoever had a prior conviction for a driver with a concealed weapon, and has a traffic violation, can get frisked. Well, actually, Your Honor, I think, for example, if he had been driving in the daytime, and it was on a major highway, that would be a different situation. I think here we have to look at all of the factors that were presented to Kirchner, Officer Kirchner at the time, which was not just that he was driving the motorcycle improperly, but that he was, again, in a high crime area, late at night, he got off the motorcycle, was standing next to him, was wearing a jacket, it wasn't like a tank top, it was a jacket that could conceal a weapon, and then he learns that this person also has a prior police contact. Very long time ago. Well, Officer Kirchner didn't know what the time was, and indeed, what Officer Ellis truly learned was that this person had had at least five prior contacts with police for, involving some type of weapons, and wanted to convey that information as quickly as possible to his partner, who he's now seeing standing outside late at night, talking to this person, and told him CCW, which Officer Kirchner stated in his declaration at ER 37 that he took that to mean at a minimum, this person had a prior for carrying a concealed weapon. He didn't know the time frame, or whether or not it was a conviction or an arrest. Under my hypothetical, shouldn't they have just given him a traffic ticket and said get on? Pardon? Shouldn't they, under my hypothetical, shouldn't they have then just given him a traffic ticket and said go on your way? Where they weren't concerned he may have stolen the motorcycle? I think that's a closer call, Your Honor, but I think here we're presented with facts where they did believe that he had just stolen, he may have stolen the motorcycle. Thank you very much, Counsel. Counsel, we'll give you a minute for rebuttal. Thank you so much. Just to speak briefly, Your Honors, to the issue of what the officers believed at the time they made the stop. What is in the record Not at the time they made the stop, the time they frisked him. Yes, but in terms of what they understood as what offense he may have committed in particular. That doesn't matter, because at the time they stopped him, they didn't know the facts or many of the facts that might have suggested that he stole the motorcycle, but they did at the time he frisked him. The additional information that they had received at that time I don't think would have affected their decision as to whether or not he had stolen the motorcycle. The fact that he wasn't licensed to drive a motorcycle and that the motorcycle wasn't registered? What I understood the officers to have indicated in their declarations was that they believed that he may have stolen the motorcycle because he left his turn signal on after he had. And then their belief was further confirmed by what they found out. And even if it wasn't a reasonable suspicion to begin with, it certainly seemed to have gotten to one. I won't go any further on that issue, Your Honor. What I would just emphasize is that the issue of the danger potential and what information was conveyed to Officer Kirchner, all we know is that what Officer Kirchner learned was that he had prior arrests or prior contacts with law enforcement. If that is a danger potential in the sense of an officer safety alert, we don't know that. That was never developed below. Moreover, if an officer safety alert or a danger potential designation is simply a proxy for prior criminal history, then I don't think that it conveys any additional information to an officer. And the fact that it is danger potential or officer safety alert should not be something that the Court weighs significantly in its reasonable suspicion determination. But here the information was specific and accurate, actually, right? The information that he was given. The information that Officer Kirchner received, that he had prior contacts. Yes. And the information that he had a concealed weapon contact. It was actually a conviction, as it turned out. That's correct. And as Your Honor pointed out, it was quite a number of years earlier. Okay. Thank you very much, counsel. The case of United States v. Garner is submitted, and we are in adjournment.
judges: B. Fletcher, Gibson , Berzon